STUART F. DELERY
Assistant Attorney General
MELINDA L. HAAG
United States Attorney
JOSHUA E. GARDNER
Assistant Branch Director
JUSTIN M. SANDBERG, IL. BAR NO. 6278377
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Mass. Ave. NW, Rm. 7302
Washington, D.C. 20001
Telephone: (202) 514-5838
Facsimile: (202) 616-8202
Email: Justin.Sandberg@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA GARCIA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GINA MCCARTHY, in her official capacity as Administrator of the U.S. Environmental Protection Agency, *et al.*,<br><br>Defendants. | Case No.: 3:13-cv-3939 (WHO)<br><br>Hearing Date: January 8, 2014<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT** |

PLEASE TAKE NOTICE that on January 8, 2014 at 2 p.m., or as soon as this matter may be heard, Defendants will move, and hereby do move, this Court to dismiss Plaintiffs' Amended Complaint in the above-captioned action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants' motion to dismiss is based upon this notice, the accompanying Memorandum of Points and Authorities, the pleadings, and any other matter the Court may consider at oral argument or otherwise.

A proposed order accompanies this motion.

Dated: November 20, 2013        Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

MELINDA L. HAAG
United States Attorney

JOSHUA E. GARDNER
Assistant Director, Federal Programs Branch

_/s/ Justin M. Sandberg_
JUSTIN M. SANDBERG, IL Bar No. 6278377
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Mass. Ave. NW, Rm. 7302
Washington, D.C. 20001
Telephone: (202) 514-5838
Facsimile: (202) 616-8202
Justin.Sandberg@usdoj.gov
_Counsel for Defendants_

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

MOTION TO DISMISS STANDARDS ............................................................................................. 4

ARGUMENT ............................................................................................................................... 4

    I.     The Court Should Dismiss Plaintiffs' APA Claim ....................................................... 4

          A.     *Heckler v. Chaney* (and Article III of the Constitution) Deprive the Court of Jurisdiction Over Plaintiffs' APA-Based Allegations. ................... 5

          B.     The Court Lacks Jurisdiction Under the APA Because Plaintiffs Have an Adequate Alternative Remedy. ...................................................... 9

    II.    Plantiffs' Due Process Claim Is Meritless ................................................................. 12

          A.     Neither Claim is Viable Because the EPA's Actions Did Not Directly Affect Plaintiffs' Alleged Property Interests ................................ 14

          B.     Plaintiffs Lack A Property Interest in a Right to Redress ............................ 15

          C.     The Due Process Clause Does Not Require Affirmative Assistance .......... 17

    III.   The Court Should Dismiss Claim Three Because Injunctive Relief Is Not a Cause of Action ...................................................................................................... 18

CONCLUSION ............................................................................................................................ 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ass'n of Irritated Residents v. EPA*,
    494 F.3d 1027 (D.C. Cir. 2007) ............................................................................... 9

*Brem-Air Disposal v. Cohen*,
    156 F.3d 1002 (9th Cir. 1998) ............................................................................... 10

*Castaneda v. USDA,,*
    807 F.2d 1478 (9th Cir. 1987) ............................................................................... 15

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) ............................................................................... 10

*Coker v. Sullivan*,
    902 F.2d 84 (D.C. Cir. 1990) ............................................................................... 10, 11

*Daniels-Hall v. Nat'l Educ. Ass'n.*,
    629 F.3d 992 (9th Cir. 2010) ............................................................................... 3

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ............................................................................... 3

*DeShaney v. Winnebago Cty. Dep't of Social Svcs.*,
    489 U.S. 189 (1989) ............................................................................... 14, 17

*Drakes Bay Oyster Co. v. Jewell*,
    729 F.3d 967 (9th Cir. 2013) ............................................................................... 5, 7, 9

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ............................................................................... 11

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................... *passim*

*Jama v. Immigration and Customs Enforcement*,
    543 U.S. 335 (2005) ............................................................................... 16

*Ky. Dep't of Corr. v. Thompson*,
    490 U.S. 454 (1989) ............................................................................... 13

*Leu v. International Boundary Comm'n*,
    605 F.3d 693 (9th Cir. 2010) ............................................................................... 8

*Logan v. Zimmerman*,
    455 U.S. 422 (1982) ............................................................................... 15

*Mahoney v. U.S. Consumer Products Safety Comm'n*,
    2005 WL 2114062 (3d Cir. 2005) ............................................................................... 6

*McCleskey v. Kemp*,
    481 U.S. 279 (1987) ............................................................................... 6

*Monn v. Gettysburg Area Sch. Dist.*,
    2013 WL 1345501 (M.D. Pa. Apr. 2, 2013) ............................................................................... 18

*N.Y. State Dep't of Law v. FCC*,
    984 F.2d 1209 (D.C. Cir. 1993)........................................................................ 6

*O'Bannon v. Town Ct. Nursing Ctr.*,
    447 U.S. 773 (1980) .............................................................................. 13, 14

*Perry v. Block*,
    684 F.2d 121 (D.C.Cir. 1982).......................................................................... 8

*Preskar v. United States*,
    248 F.R.D. 576 (E.D. Cal. 2008) ..................................................................... 11

*Schering Corp. v. Heckler*,
    779 F.2d 683 (D.C. Cir. 1985) ........................................................................ 9

*Sierra Club v. Whitman*,
    268 F.3d 898 (9th Cir. 2001) .......................................................................... 8

*Spencer Enters., Inc. v. United States*,
    345 F.3d 683 (9th Cir.2003) ............................................................................ 5

*Stimac v. Barr*,
    10 F.3d 808 (9th Cir. Nov. 23, 1993) ............................................................. 11

*Sullivan v. JP Morgan Chase Bank, NA*,
    725 F. Supp. 2d 1087 (E.D. Cal. 2010) ......................................................... 18

*Town of Castle Rock v. Gonzales*,
    545 U.S. 748 (2005) ................................................................... 13, 15, 16, 17

*United States v. Carpenter*,
    526 F.3d 1237 (9th Cir. 2008).................................................................... 6, 9

*Women's Equity Action League v. Cavazos*,
    906 F.2d 742 (D.C. Cir. 1990)....................................................................... 11

**STATE CASES**

*Californians for Alternatives to Toxics v. CDPR*,
    136 Cal. App. 4th 1049 (Cal. Ct. App. 2006)................................................ 2

*Jacobs Farm/Del Cabo, Inc. v. Western Farm Svc., Inc.*,
    119 Cal. Rptr. 3d 529 (Cal. Ct. App. 2010)........................................... 10, 11

**FEDERAL STATUTES**

5 U.S.C. § 702 ................................................................................................. 5, 10

5 U.S.C. § 704 ................................................................................................. 5, 10

5 U.S.C. § 706 ................................................................................................... 5, 8

42 U.S.C. § 2000d ................................................................................... 2, 3, 7, 14

**STATE STATUTES**

Cal. Food and Agric. Code § 14004.5 ................................................................ 11

Cal. Food and Agric. Code § 14006.5 .......................................................... 11, 12

Cal. Food and Agric. Code § 14009 ...................................................................... 10, 11, 12

**FEDERAL RULES**

Fed. R. Civ. P. 12(b) ................................................................................................ 2, 4, 9

Fed. R. Civ. P. 15(a) ...................................................................................................... 2

**STATE RULES**

Cal. Code Civ. P. § 1094.5 ..................................................................................... 10, 12

**FEDERAL REGULATIONS**

40 C.F.R. § 7.115 ................................................................................................ 2, 3, 7, 8

40 C.F.R. § 7.120 .................................................................................................. 2, 3, 7

40 CFR § 7.130 .................................................................................................... 16, 17

40 C.F.R. § 7.25 ......................................................................................................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

This case centers on a challenge to a settlement agreement entered into by the defendant United States Environmental Protection Agency (EPA) and the California Department of Pesticide Regulation (CDPR). The agreement resolved an administrative complaint filed with the EPA under Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance. The administrative complaint alleged that the CDPR, a recipient of financial assistance from the EPA, discriminated against Latino schoolchildren by not doing enough to prevent them from being exposed to pesticides, including methyl bromide, at school. The settlement agreement followed the first ever "preliminary finding" by the EPA that one of its recipients had discriminated on the basis of race, color, or national origin. Notwithstanding the first of its kind finding of discrimination and the resulting agreement, plaintiffs – a group comprised of two of the complainants and one of their family members – have sued the EPA under the Administrative Procedure Act (APA) and the Due Process Clause of the Fifth Amendment.

This case should be dismissed. With respect to their APA claim, plaintiffs allege primarily that the EPA did an inadequate investigation and negotiated a poor deal with the CDPR. But the law has long recognized that agencies have discretion to determine how best to enforce the law, subject to regulatory, statutory, and constitutional constraints, and the EPA acted within the scope of those constraints. In any case, the Court lacks jurisdiction over plaintiffs' APA claim because plaintiffs have another adequate remedy in court, namely, state court suits challenging the issuance of permits to use pesticides near the school (or schools) relevant to plaintiffs. Plaintiffs' due process claim focuses on their lack of involvement in the drafting of the settlement agreement and rests on alleged property rights in redress and a public education. It fails for three reasons: (1) the EPA did not take action against plaintiffs; (2) the plaintiffs lack a cognizable property right to redress; and (3) the EPA did not deprive anyone of a public education.

For the reasons stated above, the Court should dismiss this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim upon which relief can be granted.

## BACKGROUND

The EPA provides financial assitance to the CDPR.  *See* Amend. Compl. ¶¶ 1-2.  The CDPR "regulates the manufacture, distribution, sale, and use of pesticides in California." *Californians for Alternatives to Toxics v. CDPR*, 136 Cal. App. 4th 1049, 1055 (Cal. Ct. App. 2006).  Like other recipients of federal funds, the CDPR is prohibited by Title VI of the Civil Rights Act of 1964 from discriminating on the basis of race, color, or national origin.  42 U.S.C. §§ 2000d to 2000d–7.  To facilitate enforcement of this prohibition, the EPA has established an administrative complaint process.  40 C.F.R. § 7.120; *see generally* 42 U.S.C. § 2000d-1 (authorizing issuance of regulations to effectuate Title VI).  In 1999, plaintiffs Maria Garcia and David Garcia, along with other individuals, filed an administrative complaint (docketed as *Angelita C. v. California Department of Pesticide Regulation*, EPA File No. 16R-99-R9) alleging that the CDPR had violated the EPA's Title VI regulations by failing to adequately protect Latino schoolchildren in California from exposure, in their schools, to pesticides, particularly methyl bromide.  Amend. Compl. ¶ 2.[1]

After accepting this complaint, the EPA initiated an investigation.  40 C.F.R. § 7.115.  The EPA focused its investigation on Latino students' exposure to methyl bromide from 1995-2001.  Amend. Compl. ¶ 87.  Following its investigation, the EPA issued preliminary findings identifying a "*prima facie* violation of Title VI [by the CDPR] as a result of the adverse disparate impact upon Latino schoolchildren in California from the application of methyl bromide between 1995 and 2001."  Amend. Compl. ¶47 (quoting the EPA's preliminary findings).  In other words, the EPA

---

[1]  Plaintiffs filed an amended complaint on October 7.  Despite the fact that filing occurred more than 21 days after service of the initial pleading, Proof of Service, Sept. 18, 2013, Doc. No. 7 (explaining that the original complaint was mailed to defendants on September 4), and that plaintiffs did not seek leave to amend, *see* Fed. R. Civ. P. 15(a)(1), (2), this memorandum responds to plaintiffs' amended complaint.

found that:  Latino schoolchildren in California were exposed to methyl bromide, in school, at levels the EPA deemed adverse to the children; this adverse exposure was suffered disproportionately by Latino schoolchildren as compared to schoolchildren of other ethnicities; and the adverse exposure was caused by CDPR's registration of Methyl Bromide.  The agency had never before issued a preliminary finding of discrimination.  Amend. Compl. ¶ 6.

Title VI requires that an agency determine whether compliance can be "secured by voluntary means."  42 U.S.C. § 2000d-1.  Thus, the EPA made recommendations for achieving voluntary compliance, the CDPR responded, and negotiations ensued.  *See* Amend. Compl. ¶ 53; 40 C.F.R. § 7.115(c), (d).  Under the EPA's regulations, complainants were not asked to participate in these negotiations.  *See* Amend. Compl. ¶53; 40 C.F.R. §§ 7.115, 7.120.

Several months after the issuance of the preliminary findings, the EPA and CDPR entered into a voluntary compliance agreement (or settlement agreement).[2]  The agreement obligates the CDPR to expand a program for air monitoring (which measures pesticide levels) in several areas, make the reports of its monitoring publicly accessible, and continue education and outreach efforts in the "Latino community" in areas of high pesticide use, efforts that include providing information about how to limit exposure and how to complain about pesticide use.  Amend. Compl. ¶ 56; Voluntary Compliance Agreement ("Agreement"), Aug. 24, 2011, ¶¶ 15-16 (attached as Exhibit 1).[3]  In reaching this agreement, the EPA and CDPR noted that, since the period studied by the EPA (*i.e.*, 1995-2001), the "CDPR's monitoring, analysis, and mitigation of the potential adverse impact to workers and bystanders from methyl bromide use have significantly progressed."

---

[2]  Notwithstanding plaintiffs repeated use of the term "secret," the preliminary findings, the voluntary compliance agreement, the technical analyses, and other *Angelita C.*-related documents are publicly available on the EPA's website at http://www.epa.gov/ocrpage1/TitleVIcases/index.html#angelita.  The Court may take judicial notice of the contents of the EPA's website.  *See, e.g., Daniels–Hall v. Nat'l. Educ. Ass'n.*, 629 F.3d 992, 998–99 (9th Cir.2010).

[3]  The voluntary compliance agreement has been made part of the pleadings through incorporation by reference:  Plaintiffs refer to it over 40 times, make representations regarding its contents, and even provide a citation to specific paragraphs, *see, e.g.,* Amend. Compl. ¶¶ 56, 62 & n.20; its authenticity is not a matter of dispute (as far as the EPA is aware); and the agreement was not attached to the complaint.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

Agreement ¶ 8.  The Agreement documents these improvements.  *Id.* ¶¶ 8-10. The agreement resulted in the administrative closure of the *Angelita C.* complaint.  Agreement ¶ 22.

On the day that the EPA and CDPR signed the voluntary compliance agreement, the EPA telephoned plaintiffs' counsel, whose organization represented the *Angelita C.* complainants, to inform him of the preliminary finding, settlement agreement, and closure of the *Angelita C.* complaint.  Amend. Compl. ¶ 59.  Counsel objected to the terms of the agreement and the fact that the complainants had not participated in its drafting.  *Id.* ¶ 60. Complainants asked the EPA to undo the agreement, but it declined.  *Id.* ¶¶ 60-67.  Plaintiffs then filed their complaint in this Court.  In it, plaintiffs make two primary claims, one under the APA and the other under the Due Process Clause.  *Id.* ¶¶ 85-102.

## MOTION TO DISMISS STANDARDS

Under Rule 12(b)(1), a district court must dismiss a complaint if the court lacks jurisdiction over it.  And under Rule 12(b)(6), a district court must dismiss a complaint if the complaint fails to state a claim upon which relief can be granted.

## ARGUMENT

## I.    The Court Should Dismiss Plaintiffs' APA Claim

Plaintiffs allege that the EPA violated the APA by "execut[ing] the voluntary compliance agreement and dismiss[ing] the Title VI complaint" against the CDPR.  Amend. Compl. ¶ 86.  The decision to settle an administrative complaint and, thereby, obviate the need for (further) enforcement action is committed to agency discretion.  Accordingly, the law constrains a court's ability to review such a decision under the APA.  The Court may determine only if the agency exceeded its statutory or regulatory authority or transgressed the Constitution.  It may not assess whether the agency made a well-informed or wise decision.  In deciding to enter into the voluntary compliance agreement, the EPA did not exceed its regulatory, statutory, or constitutional authority.  Rather, it exercised its discretion to resolve the *Angelita C.* matter, and obtain compliance from the CDPR, within the bounds of the law.  Thus, the Court should dismiss this APA claim.  In any case, as plaintiffs have an adequate alternative remedy – *i.e.,* a suit in state court to challenge the state's

decision to grant permits to area farms to apply pesticides – the Court lacks jurisdiction to entertain plaintiffs' APA claim.[4]

A. *Heckler v. Chaney* (and Article III of the Constitution) Deprive the Court of Jurisdiction Over Plaintiffs' APA-Based Allegations

The APA permits judicial review of "final agency action" for which there is "no other adequate remedy in a court." 5 U.S.C. § 704. If an agency action is subject to review, a court may "set aside agency actions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706. The APA recognizes, however, that certain decisions are "committed to agency discretion by law." *Id.* § 701(a)(2) With respect to such decisions, the Court lacks jurisdiction to review the agency's action because the APA does not apply, *id.*, and, consequently, the waiver of sovereign immunity included in § 702 is inapplicable. *See Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003); 5 U.S.C. § 702. When a decision is committed to agency discretion, a court lacks the power "to review an alleged abuse of discretion regarding the making of an informed judgment by the agency," though it may review agency action to determine whether it exceeds regulatory, statutory, or constitutional limits. *Drakes Bay Oyster Co. v. Jewell*, 729 F.3d 967, 976-77 (9th Cir. 2013) (internal quotation marks omitted).

In *Heckler v. Chaney*, the Supreme Court concluded that an agency's decision to "refus[e] to take enforcement steps" is a decision presumptively committed to "an agency's absolute discretion." 470 U.S. 821, 831 (1985). The reason for this presumption is that "agency decisions to refuse enforcement" are "general[ly] unsuitab[le] for judicial review." *Id.* Why? First, "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within [the agency'] expertise," such as whether "agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies," and whether the agency has the resources to undertake the action at all. *Id.* Second, "when an agency refuses to act

---

[4] Of course, if the Court concludes that it has jurisdiction and that plaintiffs' claims survive the motion to dismiss, the EPA reserves the right, at summary judgment, to argue that its actions were reasonable in light of the administrative record.

it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts are called upon to protect." *Id.* at 832. Finally, "an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive branch not to indict – a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'" *Id.* In *Chaney*, the Court noted that the presumption of commitment to agency discretion can be rebutted when the substantive statue provides guidelines for the agency to follow in exercising its discretion. *Id.* at 833.

Courts have extended the *Chaney* presumption to agency decisions to *settle* enforcement actions. *E.g.*, *N.Y. State Dep't of Law v. FCC*, 984 F.2d 1209, 1213-15 (D.C. Cir. 1993); *Mahoney v. U.S. Consumer Products Safety Comm'n*, 146 Fed. Appx. 587, 589, 2005 WL 2114062, *2 (3d Cir. 2005); *see United States v. Carpenter*, 526 F.3d 1237, 1241-42 (9th Cir. 2008) (concluding that the Attorney General's decision to settle civil litigation is committed to agency discretion). Applying *Chaney* to settlement decisions makes sense. Like the decision not to initiate an enforcement action, the decision to settle is a decision to "refus[e] to take enforcement steps," *Chaney*, 470 U.S. at 831; it is simply a decision not to take additional enforcement steps, rather than a decision not to take any enforcement steps. What is more, the reasons for the *Chaney* presumption apply in the settlement context. The decision to settle involves a "complicated balancing" of factors within the agency's expertise, such as the availability of resources, its policy goals, and the prospects for success. *N.Y. State Dep't of Law*, 984 F.2d at 1213. The refusal to take additional enforcement steps also does not constitute an exercise of coercive power. To the contrary, it is a refusal to exercise coercive power. *Id.* And to continue the analogy to prosecutorial discretion set out in *Chaney*, just as prosecutors have the discretion to decline to indict, so they have the discretion to enter plea bargains, *McCleskey v. Kemp*, 481 U.S. 279, 312 (1987) – and so agencies, another component of the Executive Branch, should have the discretion to settle administrative enforcement actions. In short, precedent and reason demonstrate that an agency's decision to settle is committed to its discretion and so subject to limited judicial review.

Plaintiffs identify four purported problems with the EPA's decision to enter into the voluntary compliance agreement: (1) prior to entering into the agreement, the agency had limited its investigation into methyl bromide exposure from 1995 to 2001, declining to investigate students' exposure to methyl bromide in other years or to other chemicals, Amend. Compl. ¶ 87; (2) the agreement was reached without "informing and including" plaintiffs, *id.*; (3) the EPA did not "require CDPR's compliance with Title VI of the Civil Rights Act as required by 40 C.F.R. § 7.115," Amend. Compl. ¶ 87; and (4) the "settlement agreement fails to remedy the disparate adverse effects of methyl bromide and other pesticide exposures to Latino schoolchildren," *Id.* ¶ 88.  None of these purported problems justifies granting plaintiffs relief under the APA.

Under *Chaney*, the EPA has the discretion to determine the scope of its investigation. Essentially, plaintiffs' allegation regarding the scope of the investigation is a challenge to the EPA's failure to "take enforcement steps" with regard to other chemicals and other years.  *See Chaney*, 470 U.S. at 831.  Of course, under *Chaney*, the agency presumptively has the discretion to determine how to focus its investigations.  And neither Title VI, 42 U.S.C. §§ 2000d-1, nor the agency's implementing regulations, 40 C.F.R. §§ 7.115, 7.120, eliminate the agency's discretion to focus its investigation on methyl bromide exposure from 1995-2001.  Indeed, plaintiffs do not even explicitly allege that they do.  Thus, this allegation lacks merit.

Plaintiffs' objection that the settlement was reached without "informing and including" them, Amend. Compl. ¶ 87, can be understood in two ways, but neither supports their request for relief.  First, it can be understood as an allegation that the EPA did not tap into a potentially useful source of information, *i.e.*, the plaintiffs and their counsel, and so made the decision to enter into the voluntary compliance agreement without being fully informed.  But there is no statute or regulation that requires their inclusion, *see* 40 C.F.R. §§ 7.115, 7.120, and because the decision to settle is committed to the EPA's discretion, the court lacks the power "to review an alleged abuse of discretion regarding the making of an informed judgment by the agency."  *Drakes Bay*, 729 F.3d at 977.  Alternatively, this objection can be understood as an allegation that the EPA violated the Due Process Clause, and thus the APA, *see* 5 U.S.C. § 706(2)(B), by entering into the settlement

7

without consulting plaintiffs.  *See* Amend. Compl. ¶¶ 95, 102. But as explained in Section II of this memorandum, plaintiffs' due process claim lacks merit.

Plaintiffs' allegation that the EPA did not comply with § 7.115 appears to be a complaint about the timeliness of the EPA's preliminary findings.[5]  *See, e.g.,* Amend. Compl. ¶ 4 ("EPA failed to make a preliminary finding regarding compliance within 180 days of accepting the complaint for investigation, as required by 40 C.F.R. § 7.115(c)."); ¶ 46 (insisting that the EPA failed to meet the deadlines for making findings imposed by § 7.115).  Resolution of this alleged problem differs from the resolution of the other three because it turns on basic principles of constitutional standing, rather than notions of administrative discretion.   The EPA has now completed all administrative actions; plaintiffs do not allege that there are further administrative steps that the EPA needs to take.  *See* Amend. Compl.  Plaintiffs, moreover, seek only prospective relief.  Amend. Compl., Prayer for Relief, at pp. 28-29.  But there is no prospective relief that the Court can furnish to plaintiffs with respect to the EPA's alleged failure to meet the regulatory deadlines for making preliminary findings.  An injunction would be useless because the EPA has already made the preliminary findings.   And a declaratory judgment is unavailable because allegations of past harms alone do not support standing to seek a declaratory judgment.  *Leu v. International Boundary Comm'n*, 605 F.3d 693, 694-695 (9th Cir. 2010).  Thus, as there is no relief that the court can provide, the claim is not redressable and plaintiffs lack standing to raise it.  *See Perry v. Block,* 684 F.2d 121, 125 (D.C. Cir. 1982) (concluding that claims that an agency failed to meet the administrative deadlines imposed by the Freedom of Information Act are moot once the documents are released because there is no relief that the court can dispense).

The final supposed problem with the settlement agreement is that it is a bad deal because, from plaintiffs' perspective, it does not remedy the problem about which they complained.  Amend. Compl. ¶ 89.  In essence, plaintiffs disagree with the bargain struck by the EPA:  They

---

[5]  If this allegation is intended as a charge that § 7.115 requires substantive compliance with Title VI and the EPA did not secure compliance with Title VI, then it too fails.  There is no language in § 7.115 that overcomes the *Chaney* presumption and requires a specific, untaken enforcement action in this case.  *See Sierra Club v. Whitman*, 268 F.3d 898, 904-06 (9th Cir. 2001).

think the EPA could have gotten more from the CDPR in exchange for forswearing further enforcement action. *Id.* But the EPA's decision regarding what consideration to accept in exchange for promising not to take additional enforcement steps is precisely the kind of discretionary agency choice that *Chaney* protects. The decision involves "a complicated balancing of a number of factors which are peculiarly within [the agency'] expertise," such as whether the promises offered by the regulated party justify declining to take further enforcement action in view of the cost of further enforcement, the prospects for success, the agency's policy goals, and the wealth – or paucity – of total resources at the agency's disposal. *See Chaney*, 470 U.S. at 831. Indeed, in light of the complex policy choices inherent in the decision to settle, the D.C. Circuit has stated that "[w]e can no sooner question the soundness of this [settlement] bargain than we could a unilateral agency decision not to prosecute *ab initio* . . . ." *Schering Corp. v. Heckler*, 779 F.2d 683, 687 (D.C. Cir. 1985); *see also Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1031-33, 34-35 (D.C. Cir. 2007). Similarly, in a case involving the U.S. Department of Justice's decision to settle civil litigation, the Ninth Circuit distinguished a claim that could be heard, *i.e.*, one involving a claim that a settlement violated a statute, from one that would be foreclosed under *Chaney*, *i.e.*, a claim that the agency "exercised [its] discretion poorly." *Carpenter*, 526 F.3d at 1242. Plaintiffs' disagreement with the terms of the settlement agreement is an argument that the EPA exercised its discretion poorly and, consequently, the claim is foreclosed by *Chaney*.

In sum, under *Chaney* and principles of constitutional standing, the Court lacks jurisdiction over this claim except to the extent that the argument that the EPA did not consult with plaintiffs is an allegation that the EPA violated the Due Process Clause. *See Drakes Bay*, 729 F.3d 976-77 (addressing jurisdiction to entertain claims when action committed to agency discretion). But any due process-related claim fails under Rule 12(b)(6).

### B. The Court Lacks Jurisdiction Under the APA Because Plaintiffs Have an Adequate Alternative Remedy

The APA premises jurisdiction on the absence of an adequate alternative remedy in Court.

5 U.S.C. §§ 702, 704; *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998). Plaintiffs have an adequate alternative remedy, namely, state law action challenging the Ventura County Agricultural Commissioner's decision to award permits for the use of methyl bromide and other pesticides to farms in proximity to the elementary school attended by plaintiff Angelica Guzman's two children.[6] *See Jacobs Farm/Del Cabo, Inc. v. Western Farm Svc., Inc.*, 119 Cal. Rptr. 3d 529, 541 (Cal. Ct. App. 2010); Cal. Food and Agriculture Code § 14009; Cal. Code Civ. P. § 1094.5. This alternative remedy is adequate because it would allow plaintiffs to remedy the injury about which they complain (*i.e.*, that their school-aged children are exposed to methyl bromide and other pesticides). *See Coker v. Sullivan*, 902 F.2d 84, 90 n.5 (D.C. Cir. 1990); *Vietnam Veterans of America v. CIA*, 2013 WL 3855688, at *19-21 (N.D. Cal. July 24, 2013). Thus, the Court lacks jurisdiction over plaintiffs' APA claim.

An alternative remedy is adequate if it would remedy the injury about which the plaintiff complains. *See, e.g., Coker*, 902 F.2d at 90 n.5. The remedy need not "have [an] effect upon the challenged agency action to be adequate." *Id.* Thus, when a plaintiff has complained that a

---

[6] A brief note on standing would be useful at this point to understand the contours of the alternative remedy. Plaintiffs' alleged injury is that the children of plaintiffs David Garcia and Angelica Guzman – and, therefore, the grandchildren of plaintiff Maria Garcia – will be exposed, at their schools, to pesticides that will have adverse effects on them. Amend. Compl. ¶ 23. They identify three schools that their children attend or will attend in the future: Rio Lindo Elementary School, Rio de Valle Middle School, and Rio Mesa High School. Amend. Compl. ¶¶ 21-22. According to the complaint, Angelica Guzman's children are five- and six-years old and currently attend the elementary school. *Id.* ¶ 22. Mr. Garcia's children are, according to the complaint, one-year old and three-years old. *Id.* ¶21. Plaintiffs do not have standing to complain about pesticide exposure at the middle school or high school. To have standing to complain about a future injury, the injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143. 1147 (2013). Plaintiffs' children do not attend middle or high school and will not be attending them imminently. The oldest child is presumably six or seven years from attending middle school, and eight or nine years from attending high school; the others are even further off. Given the years left to pass and the number of possible intervening events, no injury from exposure to pesticides at these schools is "certainly impending." Plaintiffs could move. The schools could be redistricted. Pesticide application practices could change. State regulations could change. In short, any number of things could happen, and these multifold contingencies render plaintiffs unable to establish standing to complain about potential pesticide exposure at the middle or high schools. Plaintiffs, through Ms. Guzman, thus, at most, have standing to complain about exposure at one school – Rio Lindo Elementary School – because Ms. Guzman's children currently attend that school. The alternate remedy, then, can be focused on preventing pesticide exposure at that school. Even if plaintiffs have standing to challenge pesticide exposure at other schools, the proposed alternative remedy would still work, it would simply have to be pursued more broadly (*i.e.*, for these other schools).

---

10

recipient of financial assistance from the federal government has discriminated against him or her,
courts have routinely concluded that the APA precludes suits against the federal government
because the plaintiff can sue the recipient directly. *See, e.g.*, *Stimac v. Barr*, 10 F.3d 808, 1993 WL
483837, *1 (9th Cir. Nov. 23, 1993); *Garcia v. Vilsack*, 563 F.3d 519, 522-23 (D.C. Cir. 2009)
("[T]he alternative remedy need not provide relief identical to relief under the APA, so long as it
offers relief of the 'same genre.'" (citation omitted)); *Women's Equity Action League v. Cavazos*,
906 F.2d 742, 745 (D.C. Cir. 1990); *Preskar v. United States*, 248 F.R.D. 576, 584 (E.D. Cal.
2008).

Plaintiffs have an adequate alternative remedy.  They can bring actions challenging the
Ventura County Agricultural Commissioner's decision to award permits for the use of methyl
bromide and other pesticides to farms in proximity to the Rio Lindo Elementary School.  *See
Jacobs Farm/Del Cabo, Inc.*, 119 Cal. Rptr. 3d at 541.  The State of California has labeled certain
pesticides, like methyl bromide, as "restricted material[s]."  *See* Cal. Food and Agric. Code §
14004.5; List of Restricted Materials, available at http://www.cdpr.ca.gov/docs/enforce/dpr-enf-
013a.pdf.  To use a restricted material, a farmer must obtain a permit from his or her county
agricultural commissioner, § 14006.5; the county agricultural commissioner is a licensee of the
Director of the CDPR (the recipient of federal financial assistance) and has "authority over local
enforcement of the pesticide laws, subject to oversight by the [D]irector," *see Jacobs Farm/Del
Cabo, Inc.*, 119 Cal. Rptr. 3d at 548.  Importantly, "[a]ny interested person may request the
commissioner to review his or her action in issuing . . . a permit to use or possess a restricted
material." § 14009(a).  In response to a request for review, the commissioner must "issue a written
decision" affirming, modifying, or canceling the permit issuance.  *Id.*  If the person seeking review
is dissatisfied with the commissioner's decision, s/he can appeal to the Director of the CDPR to
review the commissioner's decision.  *Id.*

If the party seeking review is dissatisfied with the Director's decision, s/he can seek
"[j]udicial review of any decision by the director" under § 1094.5 of the California Code of Civil
Procedure.  § 14009(g).  Under this provision, the Court can review, among other things, whether

the Director abused his or her discretion.  *Id.*  "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." § 1094.5(b).  Crucially, among the factors that must be considered before a permit can be issued are "local conditions," including "[u]se in [the] vicinity of schools." § 14006.5.  Thus, for example, plaintiffs could presumably establish an abuse of discretion if the commissioner had not properly considered the use of methyl bromide or other pesticides in the vicinity of the Rio Lindo Elementary School.  This remedy is adequate, under the APA, because, if plaintiffs were successful in having the permits modified or revoked, it would alleviate the injury about which they complain – the exposure of Ms. Guzman's children to pesticides at the elementary school.

In short, the Court lacks jurisdiction over plaintiffs' APA claim because they have an adequate alternative remedy in court.

## II.     Plaintiffs' Due Process Claim Is Meritless

Plaintiffs allege that the EPA violated the procedural component of the Due Process Clause of the Fifth Amendment in two ways.  Amend. Compl. ¶ 101.  First, they claim that the EPA deprived them of an alleged property right to a remedy for discrimination by entering into a settlement agreement that "failed to provide substantive protections from the disparate adverse effects [the] EPA found."  Amend. Compl. ¶ 98.  Second, plaintiffs allege that the EPA deprived the plaintiffs' children of their property right in an education by continuing to fund the CDPR and entering into a settlement agreement that does not protect the students against exposure to methyl bromide and other pesticides.  Amend. Compl. ¶ 100.  Both versions of plaintiffs' claim lack merit.  For one thing, the EPA did not exert coercive power over plaintiffs.   Rather, any "impact" plaintiffs felt was "an *indirect and incidental* result of the Government's enforcement action [against the CDPR]," and so "does not amount to a deprivation of any interest in life, liberty, or property." *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 787 (1980) (emphasis added).  Also, plaintiffs cannot premise a due process claim on deprivation of a right to a remedy for alleged discrimination because they do not have any such right that rises to the level of a protected

12

property interest.  Finally, plaintiffs' claim premised on a deprivation of the right to a public education lacks merit because the EPA does not spray pesticides or mandate attendance at school, and the government's alleged failure to protect an individual from harm caused by a private party does not constitute an actionable deprivation under the Due Process Clause.

The Fifth Amendment provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const., Amend. V.  To prevail on a procedural due process claim, a plaintiff must demonstrate the existence of (1) a "protected" liberty or property interest, which s/he has been (2) deprived of by the government, and for which (3) inadequate procedural protections were provided.  *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

In this case, plaintiffs base their due process claims on the alleged existence of property, not liberty, interests.  Amend. Compl. ¶101.  To have a property interest in a "benefit," such as a right to redress or to an education, "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotation marks omitted).  "Such entitlements are . . . not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Id.* (internal quotation marks omitted).

Importantly, not every governmental action that detrimentally affects a protected property interest constitutes a "depriv[ation]" under the Fifth Amendment.  The Supreme Court has long recognized that "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action."  *O'Bannon*, 447 U.S. at 789.  Thus, governmental action "that is directed against a third party and affects the citizen only indirectly or incidentally" does not amount to a prohibited deprivation.  *Id.* at 788.  In addition, the government's "failure" to provide "aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual," does not constitute a deprivation under the

Due Process Clause.  *DeShaney v. Winnebago Cty. Dep't of Social Svcs.*, 489 U.S. 189, 196 (1989).

>    A.  Neither Claim is Viable Because the EPA's Actions Did Not Directly Affect Plaintiffs'
>         <u>Alleged Property Interests</u>

Both claims fail because the EPA's actions had only an indirect effect (if any) on plaintiffs' purported property interests, and the Fifth Amendment's protections do not extend to indirect effects.  In *O'Bannon*, the U.S. Department of Health Education and Welfare (HEW) terminated a nursing home's Medicare provider agreement, meaning that the nursing home was no longer eligible to receive payments from Medicare for treating Medicare-eligible residents.  447 U.S. at 775.  Residents of the nursing home sued HEW.  *Id.* at 777.  They alleged that terminating the payments would cause the home to close, inflicting psychological and physical harm on them, and that the Due Process Clause "entitled [them] to an evidentiary hearing on the merits of the decertification decision" before it was implemented.  *Id.*  The Supreme Court disagreed.  It recognized that the government's action was "directed against a third party" (*i.e.*, the nursing home), not the residents, and would affect the residents "only indirectly or incidentally."  *Id.* at 788.  This fact doomed the residents' claim, because the Supreme Court had long recognized that "the Fifth Amendment does not apply to the indirect adverse effects of governmental action."  *Id.* at 789.  The *O'Bannon* decision makes sense because governmental actions can have widespread effects, and granting due process protections to anyone touched by such actions, even indirectly, could grind governing to a halt and bury the courts in a mountain of due process litigation.

The *O'Bannon* decision forecloses plaintiffs' claim.  Under Title VI, the EPA regulates recipients – like the CDPR – not the individuals who may benefit from the use of the financial assitance by the recipient.  *See* 42 U.S.C. § 2000d-1.  (In fact, the EPA's Title VI regulations expressly exclude the ultimate beneficiary of EPA financial assistance from the definition of "recipient."  40 C.F.R. § 7.25.)  Thus, the EPA's enforcement action was directed against the CDPR, not plaintiffs. *See* Amend. Compl. ¶¶ 54, 56; Voluntary Compliance Agreement.  Like the residents of the nursing home in *O'Bannon*, then, plaintiffs are only "indirectly" affected by the EPA's action and so are unable to plead a viable due process claim.  *See also Castaneda v. USDA*,

807 F.2d 1478, 1479-80 (9th Cir. 1987) (applying *O'Bannon* and rejecting the due process claims of a convenience store worker complaining about USDA's decision to terminate the store at which he had worked from food stamp program).

   B.   <u>Plaintiffs Lack A Property Interest in a Right to Redress</u>

   Plaintiffs' due process claim premised on the right to redress fails for another reason: There is no such right that rises to the level of a property interest protected under the Due Process Clause.   Plaintiffs contend that the EPA's regulations implementing Title VI guarantee a remedy for discrimination, Amend. Compl. ¶ 98, and they cite *Logan v. Zimmerman*, 455 U.S. 422, 431 (1982), for the proposition that "the right to redress discrimination prohibited by statute is a protected due process property right," Amend. Compl. ¶ 98 (internal citations and quotations omitted).   But the "right to redress" in *Logan* encompassed a private right of action, which was controlled by the claimant.   *Logan*, 455 U.S. at 424-25, 428-31.   The Court distinguished this kind of "right to redress" from an "enforcement action" that is controlled by the agency, and which does not endow a complainant with a protected property interest.   *See id.* at 431 n.6.   This case involves an "enforcement action" controlled by the agency, not one involving a private right of action for redress.   Amend. Compl. ¶ 15 (acknowledging that plaintiffs lack a private right of action and that redress depends on the EPA controlled enforcement action).   Thus, *Logan* does not support plaintiffs' claim.

   Another Supreme Court case, *Town of Castle Rock v. Gonzales*, confirms that plaintiffs lack a protected property interest in the right to redress.   545 U.S. 748 (2005).   In *Town of Castle Rock*, the plaintiff claimed that she had a protected property interest in enforcement, by the police, of a restraining order that she had obtained against her husband.   *Id.* at 756.   The Court disagreed.   It held that plaintiff lacked an entitlement to enforcement of the restraining order because: (1) the language of the restraining order was not sufficiently mandatory to establish an entitlement, in light of the strong presumption of law enforcement discretion, *id.* at 760-63; (2) the content of the supposed entitlement was vague, and "such indeterminacy is not the hallmark of a duty that is mandatory," *id.* at 763; and (3) "[m]aking the actions of government employees obligatory can

15

serve various legitimate ends other than the conferral of a benefit on a specific class of people," and there was no indication in the statutory scheme upon which plaintiff based her claim that any obligation was meant as entitlement for people in her position.  *Id.* at 764-66.  In the alternative, the Court concluded that even if there were an entitlement to enforcement, that entitlement would not constitute a property interest protected by the Due Process Clause because it lacks "an ascertainable monetary value," and the alleged property interest comprises nothing more than an indirect benefit, which, per *O'Bannon*, is not protected.  *Id.* at 766-68.

The alleged entitlement in this case shares the defects attributed to the "entitlement" put forth in *Castle Rock*.  First, the EPA's Title VI regulations, the alleged source of the entitlement, Amend. Compl. ¶ 98, do not provide a right to redress.  The section entitled "Actions Available to EPA to Obtain Compliance"[7] states that "[i]f compliance with this part cannot be assured by informal means, EPA *may* terminate or refuse to award or to continue assistance" or the "EPA *may* also use any other means authorized by law to get compliance . . . ." 40 C.F.R. § 7.130 (emphasis added).  The use of the term "may" indicates that the EPA has the discretion, not an obligation, to act if voluntary compliance is not forthcoming.  *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 347 (2005) (explaining that the "word 'may' customarily connotes discretion").  And interpreting the regulations to preserve the EPA's discretion conforms to the background presumption, represented by the *Chaney* decision, that agencies have discretion over necessarily policy-laden enforcement choices.  (In any event, the text of § 7.130 does not leave room for any other reasonable interpretation.)

Second, the content of the supposed entitlement is too vague to establish a mandatory duty. The meaning of "redress" is not defined by plaintiffs.  The Amended Complaint makes clear that the redress secured by the voluntary compliance agreement does not suffice for plaintiffs, but it does not specify what "redress" would be adequate.  It says simply that the "voluntary compliance agreement failed to provide substantive protections from the disparate adverse effects EPA found."

---

[7] "Compliance" here refers to compliance with Title VI's nondiscrimination requirements.

Amend. Compl. ¶ 98.  After *Castle Rock*, an entitlement cannot be built on something as vague as a supposed right to "substantive protections."  545 U.S. 763-64.  Indeed, how would the EPA know how to act based on such a vague mandate?

Third, plaintiffs have not highlighted any language in the Title VI regulations that indicates an intention to create an entitlement to "redress."  The discretionary language in § 7.130 highlighted earlier demonstrates the contrary intention, *i.e.*, an intention to preserve the agency's discretion to make enforcement decisions.  Also, as with the alleged entitlement to enforcement, there is no "ascertainable monetary value" for the vague entitlement to "substantive protections," and the interest is merely an indirect benefit of the EPA's efforts to ensure that recipients of its assistance do not discriminate.

C.   The Due Process Clause Does Not Require Affirmative Assistance

Plaintiffs' claim premised on the deprivation of a right to a public education also fails for a second reason (in addition to the indirectness of the EPA's actions):  The government's failure to prevent a third party from injuring plaintiffs – assuming they have been injured – does not constitute a deprivation under the Due Process Clause.  In *DeShaney*, a boy who had been grievously injured by his father after repeated assaults alleged that the state had violated his due process rights by not protecting him from the beatings, even though it had enough information to reasonably determine that abuse was occurring.   489 U.S. at 193.  The Court concluded, however, that a due process claim cannot be based on the government's alleged "failure to protect" an individual from a third party because the Due Process Clause prohibits deprivation of life, liberty, or property by the government, and "its language cannot fairly be extended to impose an affirmative obligation on the [government] to ensure that those interests do not come to harm through other means."  *Id.* at 195.  In other words, the term "deprive" means something more than "fail to protect."  But the EPA does not spray pesticides or require attendance at school.  So plaintiffs' claim regarding the loss of the right to a public education boils down to nothing more than a claim that the EPA failed to protect plaintiffs' children at schools from exposure to pesticides, which may have a deleterious effect on their ability to learn.  *See* Amend. Compl. ¶ 100.

17

*DeShaney* forecloses this claim.[8]  *See, e.g., Monn v. Gettysburg Area Sch. Dist.*, 2013 WL 1345501, *7 (M.D. Pa. April 2, 2013) ("In any event, Plaintiffs cannot assert a procedural due process claim because they cannot allege an essential element of that claim, that the deprivation of the protected interest was done by the state.").

### III.   The Court Should Dismiss Claim Three Because Injunctive Relief Is Not a Cause of Action

Plaintiffs' third claim is premised solely on their supposed need for injunctive relief. Amend. Compl. ¶¶ 103-106.  But an injunction is a remedy, not a cause of action.  *E.g., Sullivan v. JP Morgan Chase Bank, NA*,  725 F. Supp. 2d 1087, 1099 (E.D. Cal. 2010) ("Under federal law, an injunction is a remedy, not a claim in and of itself.").  Thus, this claim should be dismissed for failure to state a claim upon which relief can be granted.

### CONCLUSION

For the reasons stated above, the Court should dismiss plaintiffs' amended complaint.


Dated: November 20, 2013                          Respectfully submitted,

                                                  STUART F. DELERY
                                                  Assistant Attorney General

                                                  MELINDA L. HAAG
                                                  United States Attorney

                                                  JOSHUA E. GARDNER
                                                  Assistant Director, Federal Programs Branch

                                                   */s/ Justin M. Sandberg*
                                                  JUSTIN M. SANDBERG, IL Bar No.
                                                  6278377
                                                  Trial Attorney
                                                  U.S. Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  20 Mass. Ave. NW, Rm. 7302
                                                  Washington, D.C. 20001
                                                  Telephone:     (202) 514-5838
                                                  Facsimile:     (202) 616-8202

---

[8] If the Court somehow determines that plaintiffs have a protected property interest that has been deprived by the EPA, the EPA reserves the right to demonstrate, on the basis of the administrative record, that it afforded plaintiffs all of the process that they were due.

1

Justin.Sandberg@usdoj.gov
*Counsel for Defendants*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES
Case No.: 13-cv-3939