1  STUART F. DELERY
   Assistant Attorney General
2  MELINDA L. HAAG
   United States Attorney
3  JOSHUA E. GARDNER
   Assistant Branch Director
4  JUSTIN M. SANDBERG, IL. BAR NO. 6278377
   Trial Attorney
5  United States Department of Justice
   Civil Division, Federal Programs Branch
6  20 Mass. Ave. NW, Rm. 7302
   Washington, D.C.  20001
7  Telephone:  (202) 514-5838
   Facsimile:  (202) 616-8202
8  Email: Justin.Sandberg@usdoj.gov

9  *Counsel for Defendants*

10

11

12                 **IN THE UNITED STATES DISTRICT COURT**
                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13                       **SAN FRANCISCO DIVISION**

14  _____
                                           )
15  MARIA GARCIA, *et al.*,                )  Case No.: 3:13-cv-3939 (WHO)
                                           )
16                 Plaintiffs,             )  Hearing Date:  January 8, 2014
                                           )
17           v.                            )  **REPLY BRIEF IN SUPPORT OF**
                                           )  **MOTION TO DISMISS AMENDED**
18  GINA MCCARTHY, in her official capacity )  **COMPLAINT**
   as Administrator of the U.S. Environmental )
19  Protection Agency, *et al.*,           )
                                           )
20                 Defendants.             )
                                           )
21  _____)

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 1

I.  Plaintiffs' APA Claim Should Be Dismissed ................................................. 1

    A.  The EPA Did Not Exceed the Scope of Its Enforcement Discretion ...................... 1

    B.  The Existence of an Adequate Alternative Remedy Deprives the
        Court of Jurisdiction .................................................................................. 6

II.  Plaintiffs' Due Process Claim Fails .................................................................. 8

    A.  The Due Process Clause Does Not Apply to Actions with Indirect Effects ........... 9

    B.  Plaintiffs Lack a Property Interest in a Right to Redress ...................................... 10

    C.  The EPA Did Not Deprive Anyone of the Right to an Education ......................... 14

CONCLUSION ............................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                    **PAGE(S)**

3

4

*Ariz. Christian Sch. Tuition Org. v. Winn,*
    131 S. Ct. 1436 (2011) ................................................................. 7

5

6

*Ass'n of Irritated Residents v. EPA,*
    494 F.3d 1027 (D.C. Cir. 2007) ..................................................... 4

7

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ...................................................................... 7

8

9

*Brem-Air Disposal v. Cohen,*
    156 F.3d 1002 (9th Cir. 1998) ...................................................... 6

10

11

*Cannon v. University of Chicago,*
    441 U.S. 677 (1979) ...................................................................... 5

12

13

*Castaneda v. USDA,*
    807 F.2d 1478 (9th Cir. 1987) .................................................... 10

14

*Chang v. United States,*
    327 F.3d 911 (9th Cir. 2003) ........................................................ 7

15

16

*Clapper v. Amnesty Int'l USA,*
    133 S. Ct. 1138 ........................................................................... 14

17

18

*Coker v. Sullivan,*
    902 F.2d 84 (D.C. Cir. 1990)..................................................... 6, 7

19

20

*Council of and for the Blind of Delaware County Valley, Inc. v. Regan,*
    709 F.2d 1521 (D.C. Cir. 1983) .................................................... 8

21

*DeShaney v. Winnebago Cty. Dep't of Social Svcs.,*
    489 U.S. 189 (1989) ........................................................... 9, 14, 15

22

23

*Doyle v. City of Medford,*
    606 F.3d 667 (9th Cir. 2010) ...................................................... 11

24

25

*Drakes Bay Oyster Co. v. Jewell,*
    729 F.3d 967 (9th Cir. 2013) ........................................................ 2

26

*Goss v. Lopez,*
    419 U.S. 565 (1975) ............................................................. 10, 12

27

28

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .............................................................................*passim*

*Jacobs Farm/Del Cabo, Inc. v. Western Farm Svc., Inc.*,
    119 Cal. Rptr. 3d 529 (Cal. Ct. App. 2010).................................... 6

*Jersey Heights Neighborhood Ass'n v. Glendening*,
    174 F.3d 180 (4th Cir. 1999) .................................................... 5

*Logan v. Zimmerman*,
    455 U.S. 422 (1982) .......................................................... 12, 13

*Miranda v. Anchondo*,
    684 F.3d 844 (9th Cir. 2012) .................................................... 5

*Monn v. Gettysburg Area Sch. Dist.*,
    2013 WL 1345501 (M.D. Pa. April 2, 2013) ............................... 15

*Morris v. Hagen*,
    2013 WL 5723323 (D.Or., Oct. 21, 2013) .................................. 13

*NAACP v. Medical Center, Inc.*,
    599 F.2d 1247 (3d Cir. 1979) ...............................................*passim*

*N.Y. State Dep't of Law v. FCC*,
    984 F.2d 1209 (D.C. Cir. 1993)................................................. 2

*O'Bannon v. Town Ct. Nursing Ctr.*,
    447 U.S. 773 (1980) ...................................................... 9, 10, 14

*Ramirez v. Ghilotti Bros. Inc.*,
    941 F. Supp. 2d 1197 (N.D. Cal. 2013)...................................... 12

*Ridder v. Office of Thrift Supervision*,
    146 F.3d 1035 (D.C. Cir. 1998)................................................ 10

*Sable Communications of Cal., Inc. v. FCC*,
    827 F.2d 640 (9th Cir. 1987).................................................... 8

*Schering Corp. v. Heckler*,
    779 F.2d 683 (D.C. Cir. 1985).................................................. 4

*Sierra Club v. Whitman*,
    268 F.3d 898 (9th Cir. 2001) .................................................. 11

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ............................................................ 13

iii

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ............................................................................*passim*

*United States v. L.A. Tucker Truck Lines, Inc.*,
   344 U.S. 33 (1952) ..........................................................................................7

**STATUTES**

5 U.S.C. § 702 ......................................................................................................6
5 U.S.C. § 704 ......................................................................................................6
5 U.S.C. § 706 ......................................................................................................8
42 U.S.C. § 2000d-1 ................................................................................*passim*
42 U.S.C. § 2000d-2 ................................................................................*passim*

**RULES AND REGULATIONS**

40 C.F.R. § 7.115................................................................................*passim*
40 C.F.R. § 7.130(b)............................................................................*passim*

**CAL. FOOD AND AGRICULTURE CODE**

Cal. Code Civ. P. §§ 1094.5 ...........................................................................6, 8
Cal. Code Civ. P. §§ 1094.6 ..............................................................................8
Cal. Code Civ. P. § 14009 ..................................................................................6

**INTRODUCTION**

The Environmental Protection Agency (EPA) settled an administrative enforcement action against the California Department of Pesticide Regulation (CDPR), thereby terminating the administrative complaint that precipitated it.   Plaintiffs, a group that includes two of the original complainants, disagree with the EPA's decision to settle – at least on the terms that it did.   They have proclaimed their disagreement in their amended complaint and in their opposition to the EPA's motion to dismiss.   Plaintiffs' Opposition to Motion to Dismiss Amended Complaint (Opp.), Dec. 11, 2013, Doc. No. 23.   But, as explained in the EPA's opening memorandum, Memo. in Support of Motion to Dismiss (MTD), Nov. 20, 2013, Doc. No. 20, the amended complaint does not contain a single viable claim.   And Plaintiffs opposition brief does nothing to undermine this simple truth.   Plaintiffs' Administrative Procedure Act (APA) claim fails because the law (i) affords agencies the discretion to make enforcement choices (such as to settle enforcement actions), and (ii) deprives the Court of jurisdiction in light of the existence of adequate alternative remedies.   Plaintiffs' due process claim should be dismissed because: (i) the Due Process Clause does not apply to actions that indirectly affect a plaintiff; (ii) plaintiffs lack a property interest in the right to redress; and (iii) the Due Process Clause does not confer an affirmative right to governmental aid (except in limited circumstances not present here).

For these reasons, as explained more fully below and in the EPA's opening memorandum, plaintiffs' amended complaint should be dismissed.

**ARGUMENT**

**I.    Plaintiffs' APA Claim Should Be Dismissed**

A.   The EPA Did Not Exceed the Scope of Its Enforcement Discretion

Plaintiffs allege that the EPA violated the APA by "execut[ing] the voluntary compliance agreement and dismiss[ing] the Title VI complaint" against the CDPR.  Amend. Compl. ¶ 86. More specifically, plaintiffs allege that: (1) prior to entering into the agreement, the agency had improperly limited its investigation in time and scope, *id.* ¶ 87; (2) the agreement was reached

without "informing and including" plaintiffs, *id.*; (3) the EPA violated 40 C.F.R. § 7.115,[1] *id.*; and (4) the settlement agreement fails to provide a remedy to Latino schoolchildren, *id.* ¶ 88.  The EPA explained in its opening brief that *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), presumptively commits to "an agency's absolute discretion" the decision to "refus[e] to take enforcement steps," and that this presumption of discretion has been extended to an agency's decision to settle enforcement actions, *e.g.*, *N.Y. State Dep't of Law v. FCC*, 984 F.2d 1209, 1213-15 (D.C. Cir. 1993).  Accordingly, the Court may not assess whether the agency made a well-informed or wise decision.  *Drakes Bay Oyster Co. v. Jewell*, 729 F.3d 967, 976-77 (9th Cir. 2013).  It may determine only if the agency exceeded its statutory, regulatory, or constitutional authority.  *Id.*  In deciding to enter into the voluntary compliance agreement, the EPA did not exceed its authority. MTD at 4-9.

Plaintiffs concede that the *Chaney* presumption generally applies to the facts of this case. Opp. at 11.  But they argue that Title VI and the EPA's regulations constrain the exercise of the EPA's enforcement discretion.[2]  *Id.* at 11-12. They identify the following statutory and regulatory provisions as constraints:  (1) the statutory and regulatory sections that prohibit discrimination by recipients of financial assistance, Opp. at 11-12, (2) section 602 of Title VI, 42 U.S.C. § 2000d-1, and 40 C.F.R. § 7.115, which plaintiffs argue require the EPA to "actually ensure compliance with Title VI in a voluntary compliance agreement before resorting to other remedies," Opp. at 12, and

---

[1]  The EPA reasonably understood plaintiffs' claim premised on § 7.115 to be about the timeliness of the EPA's actions, MTD at 8, although it addressed the possibility that the claim was about the substance of its actions, *id.* at 8 n.5.  Plaintiffs maintain that the claim is about substance, not timing.  Opp. at 13 n.7.  Accordingly, plaintiffs' rhetoric about timing, *see* Opp. at 6-7, is irrelevant to this case.

[2]  Plaintiffs argue that these statutory and regulatory provisions "rebut[ ] the *Chaney* presumption." Opp. at 11.  To be more specific, to the extent legal provisions limit an agency's enforcement discretion, they rebut the presumption that the agency's decision is immune from judicial review. *Chaney*, 470 U.S. at 832-33.  But a court continues to lacks the power "to review an alleged abuse of discretion regarding the making of an informed judgment by the agency" even when such discretion-limiting provisions exist; it may review agency enforcement actions (and enforcement-settlement actions) only to determine whether they exceed regulatory, statutory, or constitutional limits.  *Drakes Bay Oyster*, 729 F.3d at 976-77.

(3) section 603 of Title VI, 42 U.S.C. § 2000d-2, which plaintiffs insist specifically allows any "aggrieved person" to challenge an agency's decision to continue to provide funding, Opp. at 13-16.   According to plaintiffs, the EPA's alleged violations of these provisions support their allegations regarding the limited scope of the investigation, the strictures imposed by § 7.115, and the failure to provide a remedy to Latino schoolchildren.[3]  Opp. at 12-13.

None of provisions identified by plaintiffs prohibits any action taken by the EPA or requires any action not taken.  In *Chaney,* the Supreme Court rejected an argument identical to plaintiffs' first argument, *i.e.*, that substantive prohibitions on conduct by a regulated party limit the agency's enforcement discretion:   "First, we reject respondents' argument that the Act's substantive prohibitions of 'misbranding' and the introduction of 'new drugs' absent agency approval, *see* 21 U.S.C. §§ 352(f)(1), 355, supply us with 'law to apply.' These provisions are *simply irrelevant* to the agency's discretion to refuse to initiate proceedings." *Chaney*, 470 U.S. at 835-36 (emphasis added).  Thus, the prohibitions on discrimination by the recipients of financial assistance do not curtail the EPA's enforcement discretion.

Plaintiffs' argument regarding voluntary compliance agreements is similarly unavailing. The provisions cited by plaintiffs, 42 U.S.C. 2000d-1 and 40 C.F.R. §§ 7.115, 7.130, at most, require the EPA to attempt to resolve an administrative enforcement action through a voluntary compliance agreement before invoking more coercive remedies.   And the EPA did just that. Indeed, it not only attempted to resolve the matter through voluntary compliance, but in fact entered into a voluntary compliance agreement with the CDPR.  *See* Agreement (attached as Exhibit 1 to MTD).  Plaintiffs may be suggesting that these statutory and regulatory provisions somehow give the Court the power to determine if, in its opinion, the EPA secured "actual[ ] . . .

---

[3] With respect to the argument concerning the EPA's decision not to include the complainants in the settlement discussions, plaintiffs make a kind of *res ipsa loquitur* argument.  To wit, they insist, without any legal support, that the lack of inclusion itself "demonstrates the EPA's arbitrary and capricious behavior."  Opp. at 13.  This argument is meritless.  No presumption of impropriety attaches to an agency's decision not to include complainants in a Title VI enforcement action. Rather, as explained in the EPA's opening memorandum, the EPA's action was not arbitrary and capricious.  MTD at 7-8.

compliance." Opp. at 12.  But the provisions invoked by plaintiffs dictate, if anything, a procedure – *i.e.*, that an agency must attempt to negotiate voluntary compliance before it can, for example, cut off funding – they do not constrain an agency's ability to make the discretionary determination that no further enforcement action is necessary in light of the settlement of an enforcement action. *Schering Corp. v. Heckler*, 779 F.2d 683, 687 (D.C. Cir. 1985) ("We can no sooner question the soundness of this [settlement] bargain than we could a unilateral agency decision not to prosecute *ab initio* . . . ."); *see also Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1031-33, 34-35 (D.C. Cir. 2007).  That Title VI and the EPA's regulations use the word "compliance" does not mean that they constrain the EPA's enforcement discretion; any reference to "compliance" is akin to the substantive prohibitions on discrimination (both address the conduct of the regulated party), which do not limit the EPA's discretion.  *Chaney*, 470 U.S. at 836.  Here, the EPA determined that the CDPR's promised actions sufficed to justify the discontinuation of the enforcement action "in light of the actions taken by CDPR since 2001 to reduce the impact on bystanders from methyl bromide use [and] its declining use and scheduled phase-out under the Montreal Protocol."  Agreement ¶ 6.  Nothing in the U.S. Code or the EPA's regulations undercuts the EPA's discretion to make that determination.

Finally, plaintiffs' argument that § 603 of Title VI applies to the facts of this case is also faulty.  Section 603 states, in relevant part, that "[i]n the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 602, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action" under the APA.  42 U.S.C. § 2000d-2.   Plaintiffs interpret § 603 to mean that "any aggrieved person" may challenge "an agency 'action . . . to continue financial assistance . . .'" Opp. at 14-15.  Thus, they conclude that they can challenge the EPA's action in this case.

Plaintiffs' interpretation of § 603 is incorrect.  The first set of ellipses in their quotation from the statute eliminates a vital word, namely, the word "refusing."  Properly understood, the provision extends judicial review to actions "*refusing* . . . to continue financial assistance . . . ." 42

4

U.S.C. § 2000d-2 (emphasis added).  The correctness of this interpretation is evident from the structure of the sentence.  The EPA's interpretation recognizes the parallel structure of the sentence.  The actions that are reviewable are described with phrases that start with gerunds, *i.e.*, actions "terminating . . . financial assistance," "refusing to grant . . . financial assistance," and "refusing . . . to continue financial assistance."  *Id.*  Plaintiffs' interpretation ignores this structure, so the reviewable actions are described incongruously as actions "terminating . . . financial assistance," "refusing to grant . . . financial assistance," and "to continue financial assistance."  The validity of the EPA's interpretation is also demonstrated by an analysis of § 602 of Title VI, 42 U.S.C. § 2000d-1.  Section 603 is designed to provide review of certain actions described in § 602. Section 602 states that "[c]ompliance with any requirement adopted pursuant to this section may be effected (1) by the . . . refusal to grant or to continue assistance under such program or activity to any recipient  . . . ." The structure of this provision – both logical (its aim is compliance), and grammatical (one cannot read it as saying that "[c]ompliance may be effected by the  . . . to continue assistance") – and a comparison of § 602 and § 603, *see Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012) (noting that provisions should be read in *pari materia*), establish that § 603 does not authorize judicial review of decisions "to continue" assistance.

Precedent supports this interpretation of the statute.  Courts have declined to conclude that private parties have the power to sue federal agencies to require them to cut-off funding for violations of Title VI, because such suits would "disrupt" agencies' ability to "efficiently [ ] allocate [their] enforcement resources."  *See Cannon v. University of Chicago*, 441 U.S. 677, 708 n.41 (1979); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999). And the case plaintiffs cite in support of this argument, *NAACP v. Medical Center, Inc.*, 599 F.2d 1247, 1254 n.10 (3d Cir. 1979), does not bolster their claim.  Plaintiffs contend that the Third Circuit held that the plaintiffs had a "right to seek judicial review of the [agency's] action to continue funding . . . ."  *Id.* at 13 (internal quotation mark omitted).  But it held no such thing. Rather, the court declined to decide whether the plaintiffs could challenge the agency's decision that the defendant hospital was complying with Title VI, because the court concluded that the

plaintiffs could bring an action directly against the hospital, the recipient of financial assistance. *Medical Center, Inc.*, 599 F.2d at 1254 n.10.  Two other points regarding this case bear mention. First, this was a pre-*Chaney* case, so its reservation of issue of whether plaintiffs could challenge the agency's decision regarding compliance should be discounted.  Second, the court concluded that the plaintiffs could not sue the agency "to compel funding termination," labeling that an "impermissible result."  *Id.* at 1255 n.27.

In short, no statutory or regulatory provision eliminated the EPA's discretion to act as it did.  Thus, as explained in the EPA's opening brief, plaintiffs' APA claim must be dismissed.

B.   <u>The Existence of an Adequate Alternative Remedy Deprives the Court of Jurisdiction</u>

The APA premises jurisdiction on the absence of an adequate alternative remedy in Court. 5 U.S.C. §§ 702, 704; *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998).  Plaintiffs have an adequate alternative remedy, namely, state law actions challenging the Ventura County Agricultural Commissioner's decision to award permits for the use of methyl bromide and other pesticides to farms in proximity to the elementary school attended by plaintiff Angelica Guzman's two children.  *See Jacobs Farm/Del Cabo, Inc. v. Western Farm Svc., Inc.*, 119 Cal. Rptr. 3d 529, 541 (Cal. Ct. App. 2010); Cal. Food and Agriculture Code § 14009; Cal. Code Civ. P. § 1094.5. This alternative remedy is adequate because it would allow plaintiffs to remedy the injury about which they complain (*i.e.*, that their school-aged children are exposed to methyl bromide and other pesticides).  *See Coker v. Sullivan*, 902 F.2d 84, 90 n.5 (D.C. Cir. 1990).  Thus, the Court lacks jurisdiction over plaintiffs' APA claim.

Plaintiffs dispute the existence of an adequate alternative remedy.  Opp. at 16-19.  They contend that the remedy proposed by the EPA is inadequate because it was not created by Congress.  *Id.* at 16-17.  Plaintiffs also suggest that there is an independent problem with the remedies being available through state fora as opposed to federal ones.  *Id.* at 17.   Next, they argue that the proposed remedy is inadequate because they would be unable to vacate the settlement and reopen the Title VI complaint through the state law processes.  *Id.* at 17-18.  In addition, they highlight the Ninth Circuit's statement that "[t]he Supreme Court has repeatedly upheld an

aggrieved party's prompt access to the district court when it provides greater redress and broader opportunity to develop a claim than is available in a more limited statutory scheme," *Chang v. United States*, 327 F.3d 911, 923 (9th Cir. 2003). Opp. at 19. Finally, they label as "ridiculous" the notion that they might have to file multiple challenges that carry an "unclear remedial outcome." *Id.* at 19.

None of these arguments is convincing. The text of the APA does not limit the alternative remedy to one crafted by Congress. The Supreme Court opinion that plaintiffs cite for the proposition that the remedy must have been created by Congress, *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988), held that a suit for damages in the Court of Claims was not an adequate remedy for a claim relating to an ongoing relationship between the federal government and states, *id.* at 904 n. 31; it did not address the adequacy of remedies created by state law. Thus, it is not controlling with respect to that issue. *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1448–49 (2011); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37-38 (1952). Moreover, interpreting the APA to permit state-law actions against non-federal entities to be adequate remedies accords with the reluctance of courts to act as the "supreme supervisor of federal agency enforcement" and, thereby, superintend agencies' monitoring of the recipients of their financial assistance. *Coker*, 902 F.2d at 89 (explaining that Court should not steer an agency's resources because it lacks knowledge of competing concerns). Importantly, among the remedies found to be adequate alternatives in *Coker* were state administrative hearings that could result in state judicial review. *Id.* This is precisely the sort of remedy available here.

And the fact that the proposed remedy would not allow plaintiffs to undo the challenged agency action does not mean that the remedy is inadequate. The question is not whether the proposed remedy would undo the agency's action, but whether, if successful, it would alleviate the injury about which the plaintiff complains. *Coker*, 902 F.2d at 89 n.5. And the proposed remedy, if successful, would alleviate plaintiffs' alleged injuries by allowing them to reduce the levels of pesticides to which their children are exposed.

Next, any assertion that the APA remedy will provide plaintiffs with greater redress and a

broader opportunity to develop their claim is false.  One goal of this suit may be the imposition of more stringent substantive limits on pesticide exposure.  Amend. Compl. ¶ 12.  But the EPA cannot unilaterally, through a Title VI enforcement action, force the CDPR to implement more stringent pesticide requirements. The EPA could request the implementation of such requirements to resolve a pending Title VI investigation. The CDPR could refuse, however.  *See Medical Ctr., Inc.*, 599 F.2d at 1255 n.27.  Of course, the EPA could then try to cut off funding to the CDPR, 40 C.F.R. § 7.130(b), but that would not change the state's requirements. The proposed alternative remedy, on the other hand, would allow plaintiffs to directly curb their children's exposure to pesticides by convincing the state to cancel or modify the permits for the application of pesticides in the vicinity of their children's school.  What is more, an APA claim does not furnish plaintiffs with a broader opportunity to develop their claim, because it is reviewed on the basis of an administrative record, as is the proposed state-law remedy.  5 U.S.C. § 706; Cal. Code Civ. P. §§ 1094.5, 1094.6.

Finally, plaintiffs' last two arguments also fail.  That plaintiffs may need to file multiple state law challenges does not render the proposed remedy inadequate.  *E.g., Council of and for the Blind of Delaware County Valley, Inc. v. Regan,* 709 F.2d 1521, 1532 (D.C. Cir. 1983)  ("Even if we agreed that one nationwide suit would be more effective than several section 124 suits, that does not mean that the remedy provided by Congress is *inadequate*.") (emphasis in original). Nor is there any merit to plaintiffs' argument that the proposed remedy is flawed because it offers an "unclear remedial outcome."  Plaintiffs seem to mean by this assertion that they might not prevail under state law, but that fact does not establish that the proposed remedy is inadequate.  *See Sable Communications of Cal., Inc. v. FCC*, 827 F.2d 640, 642 (9th Cir. 1987).

In sum, plaintiffs have an adequate alternative remedy to an APA claim and the existence of that remedy eliminates the Court's jurisdiction over their APA claim.

## II.     Plaintiffs' Due Process Claim Fails

Plaintiffs allege that the EPA violated the procedural component of the Due Process Clause of the Fifth Amendment in two ways.  Amend. Compl. ¶ 101.  First, they claim that the EPA deprived them of an alleged property right to a remedy for discrimination.  Amend. Compl. ¶ 96.

8

Second, plaintiffs allege that the EPA deprived the plaintiffs' children of their property right in an education by continuing to fund the CDPR and entering into a settlement agreement that does not protect the students against exposure to methyl bromide and other pesticides.  Amend. Compl. ¶ 100.  Both versions of plaintiffs' claim lack merit.  For one thing, the EPA did not exert coercive power over plaintiffs.  Rather, any "impact" plaintiffs felt was "an *indirect and incidental* result of the Government's enforcement action [against the CDPR]," and so "does not amount to a deprivation of any interest in life, liberty, or property."  *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 787 (1980) (emphasis added).  Also, plaintiffs cannot premise a due process claim on deprivation of a right to a remedy for alleged discrimination.  *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), establishes that they do not have a right to a remedy that rises to the level of a protected property interest.  Finally, plaintiffs' claim premised on a deprivation of the right to a public education lacks merit because the EPA does not spray pesticides or mandate attendance at school, and the government's alleged failure to protect an individual from harm caused by a third party does not constitute an actionable deprivation under the Due Process Clause, *DeShaney v. Winnebago Cty. Dep't of Social Svcs.*, 489 U.S. 189, 196 (1989).

A.   The Due Process Clause Does Not Apply to Actions with Indirect Effects

Plaintiffs attempt to distinguish *O'Bannon* by arguing the following:  (1) they have a legitimate property interest, whereas the plaintiffs in *O'Bannon* did not; and (2) "Title VI provides a direct benefit to all persons by prohibiting EPA funded discrimination."  Opp. at 20-21.  Neither argument is persuasive.  The plaintiffs in *O'Bannon* articulated two different due process claims, 447 U.S. at 784, and the Court rejected one based on the absence of a property right, *id.* at 785-86.  But it rejected the other because government action that affects someone "only indirectly or incidentally" does not constitute a deprivation under the Due Process Clause.  *Id.* at 788.  The EPA relies on this second holding.

Plaintiffs' focus on whether there is a "direct benefit" misses the point of the EPA's argument, which is about the nature of the EPA's conduct.  The existence of a property interest does not, by itself, establish a violation of the Due Process Clause.  A plaintiff must also establish

9

that the government's conduct rises to the level of a "depriv[ation]."  U.S. Const., Amend. V.  And the Supreme Court in *O'Bannon* concluded that there is a "distinction between government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally. . . ." *O'Bannon*, 447 U.S. at 788.  The distinction, of course, is that the Due Process Clause does not regulate government conduct that indirectly affects an individual.  *Id.* at 789; *See also Castaneda v. USDA*, 807 F.2d 1478, 1479-80 (9th Cir. 1987); *Ridder v. Office of Thrift Supervision*, 146 F.3d 1035, 1041 (D.C. Cir. 1998).  The EPA's action was directed against the CDPR:  The EPA investigated the CDPR, issued an informal determination against the CDPR, and extracted promises from the CDPR in its settlement agreement.  Thus, any negative effects experienced by plaintiffs would be an indirect result of the EPA's actions directed at the CDPR.  *See O'Bannon*, 447 U.S. at 789 ("[T]he fact that the decertification of a home may lead to a severe hardship for some of its elderly residents does not turn the decertification into a governmental decision to impose harm.").  Indirect effects do not constitute a deprivation under the Due Process Clause. *O'Bannon*, 447 U.S. at 788-89.

B.  <u>Plaintiffs Lack a Property Interest in a Right to Redress</u>

Plaintiffs dispute the contention that they lack a property interest in a right to a remedy. First, they assert, without elaboration, that "[t]he specific question of entitlement to [have] 'someone else arrested for a crime' by a police officer . . . remains fundamentally different than the duty Congress imposed on federal agencies to act such that no person shall endure federally financed discrimination."  Opp. at 22.  Second, they argue that mandatory language in Title VI and the EPA's regulations demonstrate an entitlement to redress.  *Id.* (citing 42 U.S.C. § 2000d-1, for the proposition that the EPA "shall" attempt to secure voluntary compliance, and 40 C.F.R. §§ 7.115(e), 7.130(b), for the proposition that the EPA "shall" initiate administrative proceedings to deny or rescind federal financial assistance if voluntary compliance is not forthcoming).  Third, plaintiffs contend that the EPA has made an argument rejected by the Supreme Court in *Goss v. Lopez*, 419 U.S. 565, 573-74 (1975), namely, that "because EPA has discretion under its

regulations to determine the remedy, it has discretion to withhold the property interest in a remedy." Opp. at 23.

There is no merit to plaintiffs' suggestion that the principles discussed in *Castle Rock* are inapplicable outside of the context of the enforcement of criminal law. The Supreme Court did not set such a limitation, and the Ninth Circuit has applied *Castle Rock* to claims seeking an entitlement to benefits other than criminal-law enforcement, *Doyle v. City of Medford*, 606 F.3d 667, 674-75 (9th Cir. 2010). Precedent aside, there is no reason to think that the holding in *Castle Rock* is inapplicable to this case. To the contrary, the decisions rest on similar foundations: *Castle Rock* rests in substantial part on the enforcement discretion afforded law enforcement officers, 545 U.S. 760-61, which is similar to the enforcement discretion afforded agencies under *Chaney*, 470 U.S. at 832 (analogizing agency enforcement discretion to the discretion of prosecutors in criminal actions).

Nor does the statutory and regulatory language identified by plaintiffs establish an entitlement to redress. Title VI states that agencies "shall" attempt to secure compliance by voluntary means before pursuing other enforcement actions. 42 U.S.C. § 2000d-1. But this language does not ensure any substantive outcomes. It pertains only to the ordering of procedures, and an entitlement to procedure cannot be the basis of a property interest. *Castle Rock*, 545 U.S. at 764. An EPA regulation provides that if the recipient of financial assistance does not comply with a formal determination of non-compliance within 10 days, then the agency "must" start proceedings to terminate or suspend assistance. 40 C.F.R. §§ 7.115(e), 7.130(b). That provision applies only after the agency has issued a formal determination of non-compliance, however, which the EPA did not do here. Moreover, apparently mandatory language does not necessarily overcome the presumption of enforcement discretion when used in a provision that "prospectively affects government action." *Sierra Club v. Whitman*, 268 F.3d 898, 904 (9th Cir. 2001); *Castle Rock*, 545 U.S. at 761. And there are textual and practical reasons to conclude that the presumption of discretion is not overridden here. The textual reason is that § 7.130(a) discusses the agency's enforcement options in discretionary terms, stating that if the EPA cannot secure

11

voluntary compliance, then it "may" terminate assistance or use any other means authorized by law to secure compliance.  The practical reason is that discretion is a "practical necessity," *Castle Rock*, 545 U.S. at 762, given the limited resources available for enforcement.  *See Chaney*, 470 U.S. at 831-32.

Plaintiffs' argument based on *Goss* also misses the mark.  *Goss* holds, in relevant part, that a state need not create a property interests in an education, but that once it does, it can deprive a student of that entitlement only after providing due process.  419 U.S. 573-74.  The EPA's point, however, is that no property interest in redress has been created, not that the EPA has the power to ignore the entitlement because the EPA created it as a matter of discretion.

Plaintiffs' opposition brief ignores two of the EPA's arguments in support of the conclusion that plaintiffs' lack an entitlement to redress:  (1) the proposed entitlement is too vague to create an entitlement; and (2) plaintiffs have not identified any language indicating an intention to create an entitlement to redress for people in their position.  MTD at 16-17.  By failing to address these arguments, plaintiffs have conceded them.  *Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1210 n.7 (N.D. Cal. 2013).

Even if the arguments had not been conceded, however, they would sink plaintiffs' claim. First, *Castle Rock* held that "someone [cannot] be safely deemed 'entitled' to something when the identity of the alleged entitlement is vague."  545 U.S. at 763.  Plaintiffs claim an entitlement to a "right to redress" of discrimination.  Amend. Compl. ¶ 97.  But they never definitively specify the substance of this "right to redress."  Is it an entitlement to more stringent pesticide requirements? *See* Amend. Compl. ¶ 12.  Is it an entitlement to have the EPA initiate proceedings to cut off financial assistance to the CDPR?  *See* Opp. at 23.  Is it something else?  Plaintiffs do not clearly say, and this vagueness dooms their claim to an entitlement to redress, regardless of whether Title VI or the EPA's regulations use any mandatory language.[4]   At all events, plaintiffs lack an

---

[4] In the amended complaint, plaintiffs cited *Logan v. Zimmerman*, 455 U.S. 422, 431 (1982), as support for the proposition that they have a property interest in redress.  The EPA argued in its motion to dismiss that, in fact, *Logan* does not support plaintiffs' claim because the "right to redress" in that case was comprised of a private right of action, and the *Logan* Court distinguished private rights of action from "enforcement action[s]" controlled by the agency, like the one in this

entitlement, sufficient to establish a property interest, in either stricter pesticide requirements or the initiation of proceedings. As discussed earlier, the EPA, through a Title VI enforcement action, cannot unilaterally establish more stringent pesticide requirements. *See* 40 C.F.R. §§ 7.115, 7.130. The EPA can request them, but if the CDPR does not want to implement them, then it can choose to lose its funding rather than accede to the EPA's request. *See Medical Center*, 599 F.2d at 1255 n.27. Plaintiffs cannot be entitled to redress than the EPA cannot guarantee. Nor do plaintiffs have a property right in the EPA initiating proceedings. As noted earlier, an entitlement to procedure cannot be the basis of a property interest. *Castle Rock*, 545 U.S. at 764.

Second, plaintiffs do not identify any language indicating that Title VI or the EPA's regulations create an entitlement for individuals in plaintiffs' position. Indeed, if Congress or the EPA had intended to create an entitlement to redress for them, then one would expect the statute and regulation to provide for complainants' inclusion in the enforcement process after the filing of an administrative complaint.[5] *Castle Rock*, 545 U.S. at 765-66. But they do not.

case, which do not create property rights. *Logan*, 455 U.S. at 431 n.6. Plaintiffs, in their opposition, contend that the agency enforcement action here is unlike the agency enforcement action referenced in *Logan* because the EPA lacks the discretion to decline to enforce. Opp. at 21-22. But as discussed above, neither Title VI nor the EPA's regulations strip the EPA of its enforcement discretion. And in any case, the supposed entitlement here suffers from additional problems not present in *Logan*, such as the vagueness of the supposed entitlement.

[5] What is more, plaintiff Angelica Guzman was not even a complainant. So, how could the EPA have been expected to include her in the negotiations? In other words, any injury she allegedly may have suffered as a result of her lack of involvement in the settlement negotiations was traceable to the fact that she was not a complainant, rather than anything the EPA did. And as she is the only plaintiff who could establish a cognizable injury, MTD at 10 n.6, plaintiffs lack standing to bring this suit. Plaintiffs argue that Maria Garcia and David Garcia, who were complainants, can establish standing because (i) they have suffered "[p]rocedural injuries," and (ii) it is "likely, not conjectural or hypothetical" that Mr. Garcia's children will attend Rio Lindo Elementary School, Rio de Valle Middle School, and Rio Mesa High School. Opp. at 18-19 n.10. But to establish a "procedural injury," plaintiffs must demonstrate that the procedural right, of which they have allegedly been deprived, protects some concrete interest of theirs. *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009). Maria Garcia and David Garcia cannot demonstrate that any substantive right of theirs is at stake, because their substantive rights depend on David Garcia's children, who do not attend school and will not do so for years. (What is more, Maria Garcia is suing as a grandparent; plaintiffs have not alleged that she has custody of the children; and the EPA is aware of no cases finding that a non-custodial grandparent has standing to sue based on injuries suffered by her grandchildren. *See Morris v. Hagen*, 2013 WL 5723323, *4 -5 (D. Or., Oct. 21,

13

1

2     C.   The EPA Did Not Deprive Anyone of the Right to an Education

3          Plaintiffs' claim premised on the deprivation of a right to a public education also fails for a

4     second reason (in addition to the indirectness of the EPA's actions):   The government's failure to

5     prevent a third party from injuring plaintiffs – assuming they have been injured – does not

6     constitute a deprivation under the Due Process Clause.   *DeShaney*, 489 U.S. at 196.   Plaintiffs

7     disagree.     They argue that the EPA has "directly jeopardized" Latino schoolchildren by

8     "allow[ing]" them to experience higher levels of pesticides.   Opp. at 24.   They also maintain that

9     the "EPA's *failure to protect* and enforce the Garcias' rights under Title VI substantially impinges

10    on, and unfairly restricts their property interest in, a public education."   *Id.* (emphasis added).   To

11    put a finer point on it, plaintiffs insist that the *DeShaney* principle is inapplicable because Title VI

12    and the EPA's regulations require the EPA to remedy discrimination.   *Id.* at 25.

13         Far from refuting the need for dismissal, Plaintiffs' arguments bolster the EPA's position

14    and demonstrate the applicability of *DeShaney* to this claim.   In light of *Deshaney*, the relevant

15    question is whether the EPA's conduct amounts to something more than a failure to protect a

16    property interest – here an alleged interest in an education – and therefore constitutes a cognizable

17    deprivation under the Due Process Clause.   *DeShaney*, 489 U.S. at 195-96.   Plaintiffs' argument, at

18    bottom, is that Congress and the EPA created a right to a remedy and that, by failing to enforce this

19    right, the EPA has affected the students' alleged right to an education.   Opp. at 24-25. But even if

20    this argument were correct – it is not, as explained earlier – it would not demonstrate that the

21    EPA's actions had deprived anyone of an education.   At best (for plaintiffs), this argument would

22    show the existence of a separate property right in redress and that the EPA's conduct had an

23    indirect effect on education, which is not actionable under *O'Bannon*.     Indeed, plaintiffs'

24    ────────────────────────────────────────────

25    2013).)   To establish standing, the alleged injury must be "certainly impending," *Clapper v.*
      *Amnesty Int'l USA*, 133 S. Ct. 1138, 1143. 1147 (2013), and given the many contingencies upon
26    which plaintiffs' purported injury rests, MTD at 10 n.6, it cannot be thought to be "certainly
      impending."     Importantly, the Court's standing inquiry should be "especially rigorous when
27    reaching the merits of the dispute would force us to decide whether an action taken by one of the
      other two branches of the Federal Government was unconstitutional."   *Clappe*r, 133 S.Ct. at 1147
28    (quotation marks omitted).

arguments in their opposition brief support the EPA's position that this claim amounts to an allegation that the EPA failed to protect Latino students from alleged harm caused by the CDPR and the farms that use pesticides.  As noted, plaintiffs maintain that the EPA "allow[ed]" the students to experience unhealthy pesticide levels and "fail[ed] to protect" their rights.  Opp. at 24. "Allow[ing]" alleged harm and "fail[ing]" to protect students do not constitute deprivations by the EPA.  They are paradigmatic complaints about a lack of "governmental aid" to prevent harm caused by someone else.  The Due Process Clause, however, generally "confer[s] no affirmative right to governmental aid." *DeShaney*, 489 U.S. at 196; *see also Monn v. Gettysburg Area Sch. Dist.*, 2013 WL 1345501, at *7 (M.D. Pa. April 2, 2013) ("In any event, Plaintiffs cannot assert a procedural due process claim because they cannot allege an essential element of that claim, that the deprivation of the protected interest was done by the state.").  Accordingly, this claim should be dismissed.[6]

**CONCLUSION**

For the reasons stated above and in the EPA's opening memorandum, the Court should dismiss plaintiffs' amended complaint.

Dated: December 20, 2013                    Respectfully submitted,


STUART F. DELERY                            MELINDA L. HAAG
Assistant Attorney General                  United States Attorney

JOSHUA E. GARDNER                            */s/ Justin M. Sandberg*
Assistant Director, Federal Programs Branch   JUSTIN  M.  SANDBERG,  IL  Bar  No.
                                             6278377
                                             U.S. Department of Justice
                                             20 Mass. Ave. NW, Rm. 7302
                                             Washington, D.C. 20001
                                             Telephone:    (202) 514-5838
                                             Facsimile:    (202) 616-8202
                                             Justin.Sandberg@usdoj.gov

---

[6] Plaintiffs concede that Count III does not present a viable claim. Opp. at 2 n.1.  It should be dismissed.